```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF VIRGINIA

                     Alexandria Division

UNITED STATES,                  )
                                )
                                )
        v.                      )       1:17cr82 (JCC)
                                )
                                )
 MUSA KUMARA,                   )
                                )
        Defendant.              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Musa Kamara's ("Defendant") Motion for a Bill of Particulars. [Dkt. 39.] Defendant's Motion to Suppress Evidence [Dkt. 51] and Motion for Discovery [Dkt. 50] are also before the Court. For the following reasons, the Court will deny the motion for a bill of particulars. The Court will also deny Defendant's motion to suppress and his motion for discovery.

## I. Background

On April 13, 2017, a grand jury returned an indictment that charged Defendant with conspiracy to commit wire and bank fraud and conspiracy to commit access device fraud. Indictment [Dkt. 19]. On May 11, 2017, the grand jury returned a superseding indictment that added ten substantive counts to the two conspiracy counts already alleged, including two counts of Aggravated

Identity Theft against Defendant. Superseding Indictment [Dkt. 47]. The superseding indictment alleges that between January 2014 and April 2017, Defendant conspired with others to purchase stolen credit card numbers online, encode those numbers onto physical cards, and use those cards to make fraudulent purchases. *See* Superseding Indictment [Dkt. 47], ¶ 11. More specifically, the superseding indictment alleges that Defendant received emails from a co-conspirator on at least two occasions with stolen credit card numbers, exchanged text messages with two different co-conspirators regarding the use of re-encoded cards, and possessed at least three re-encoded cards when he was arrested in Washington, D.C. *Id.*, ¶ 12. In addition, the superseding indictment alleges that Defendant unlawfully transferred, possessed, or used L.L.'s Capital One payment card ending in 8856 and S.E.'s Citibank payment card ending in 5175. *Id.*, ¶ 31.

With a few exceptions,[1] both parties have filed pleadings and responsive materials for all three motions. Oral argument was held on May 25, 2017. These matters are now ripe for disposition.

**II. Legal Standard**

A. <u>Motion for a Bill of Particulars</u>

Under Federal Rule of Criminal Procedure 7(f), the court "may direct the government to file a bill of particulars." Fed.

---

[1] Defendant's reply brief for his Motion for Discovery, which was due on May 22, 2017, was not filed until May 23, 2017. Pursuant to Local Criminal Rule 47(F), Defendant's reply was untimely and was therefore not considered by this Court.

2

Rule Crim. P. 7(f). The decision to grant or deny a motion for a bill of particulars rests with the sound discretion of the trial court. *United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973). The purpose of a bill of particulars is to "supply any essential detail which may have been omitted from the indictment," *id.* at 691, but the Government need not "provide detailed disclosure of the government's evidence in advance of trial," *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 406 (4th Cir. 1985). The ultimate test is whether "deprivation of the information sought will render the defendant subject to unfair surprise." *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (citing *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996)).

B.  Motion to Suppress

The Fourth Amendment requires that all searches and seizures be supported by a warrant based on probable cause. *See Katz v. United States,* 389 U.S. 347, 357 (1967). Probable cause "is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). Probable cause determinations are based on the "totality of the circumstances" of each case. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003). Probable cause is found "where the known facts and circumstances are sufficient to warrant a man

3

of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696 (1996).

A court reviewing a magistrate's determination of probable cause does not assess the existence of probable cause *de novo.* Instead, the court's task is to ascertain whether the magistrate had a substantial basis for concluding that probable cause existed. *Gates,* 462 U.S. at 238-39. In doing so, courts are to give the magistrate's determination "great deference." *Id.* at 236. In addition, courts should not invalidate warrants by interpreting affidavits in a "hypertechnical, rather than a commonsense, manner." *Id.; see also United States v. Gary,* 420 F. Supp. 2d 470, 476 (E.D. Va. 2006). To assess a magistrate's finding of probable cause, a reviewing court may look only at the evidence provided to the magistrate, as well as any reasonable inferences that may be drawn therefrom. *Gates,* 462 U.S. at 235.

C. Motion for Discovery

Federal Rule of Criminal Procedure 16 states that "the government must provide to the defendant" a list of items prior to trial, including: (1) defendant's oral statements; (2) defendant's written or recorded statements; (3) defendant's prior criminal record; (4) any documents or objects that may be material to the defense, may be used in the Government's case-in-chief, or may belong to the defendant; (5) the results of any examinations and

4

tests that the Government has in its possession or knows exist and that may be material to the defense; and (6) a written summary of potential testimony from expert witnesses. *See* Fed. R. Crim. P. 16(a)(1)(A)-(G). It also makes clear that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *Id.* 16(d)(1).

In addition to the Federal Rules, "due process requires that the Government disclose to the accused any favorable evidence in its possession that is material to guilt or punishment." *United States v. Beckford*, 962 F. Supp. 780, 785 (E.D. Va. 1997) (citing *Brady v. Maryland,* 373 U.S. 83, 87 (1963)). Favorable evidence includes both exculpatory evidence and evidence that may be used to impeach Government witnesses. *See United States v. Bagley,* 473 U.S. 667, 676 (1985); *see also Giglio v. United States,* 405 U.S. 150, 154 (1972). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682.

In fulfilling its *Brady* obligations, "the Government must actively search out the requested material in its files and in the files of related agencies reasonably expected to have possession of such information." *Beckford*, 962 F. Supp. at 785 (citing *Kyles v. Whitley,* 514 U.S. 419 (1995); *United States v. Agurs,* 427 U.S. 97 (1976) (holding that a defendant's failure to

request favorable evidence did not leave the Government free of all obligation to disclose *Brady* material)). "However, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* (citing *Bagley,* 473 U.S. at 675).

### III. Analysis

A.  Motion for a Bill of Particulars

Defendant now asks the Court to order the Government to produce the following particulars. First, Defendant requests "[a] description of each alleged overt act of the accused, and the location of and date alleged for each overt act."[2] Def.'s Mot. for Bill of Particulars [Dkt. 39] at 1. Second, Defendant seeks "[t]he identity of each federal district in which the government intends to attempt to prove that any act of the claimed conspiracy allegedly occurred, as well as each act alleged to have occurred in each of said districts." *Id.* at 2. Third, Defendant requests "[t]he amount of loss the prosecution intends to claim is attributable to the accused." *Id.*

The Court first considers Defendant's request for a more detailed description of each alleged overt act. The Government argues that both the original and superseding indictments provide sufficient information about Defendant's alleged overt acts.

---
[2] The original indictment included only one overt act alleged against Defendant in paragraph 5(a). Def.'s Mot. [Dkt. 39] at 1.

6

Gov't Opp. [Dkt. 47] at 3. For example, the Government points out that it has provided specific dates and times, down to the second, during which Defendant allegedly sent text messages to his co-conspirators about the use of re-encoded cards. *Id.* at 4; *see also* Superseding Indictment, ¶ 12(b). The Government also contends that the superseding indictment makes clear that Defendant was arrested in Washington, D.C., on April 23, 2017, at which time he had at least three re-encoded cards in his possession. Opp. at 4; *see also* Superseding Indictment, ¶ 12(i).

Given these details, the Court finds that the Superseding Indictment provides Defendant with more than enough information about the alleged overt acts to adequately prepare a defense for trial. No further specificity is required. *See United States v. Kim*, 2012 WL 5879830, at *2 (E.D. Va. Nov. 20, 2012) ("A defendant is not entitled to have the Government specify the details of its proof of acts or allegations set forth in the indictment, nor is he entitled to have the Government furnish the precise manner in which the crimes charged were committed."). Accordingly, Defendant's request for more information on his alleged overt acts is denied.

Next, the Court turns to Defendant's request for the Government to identify each federal district and the acts alleged to have occurred therein. The superseding indictment already alleges that the conspiracy occurred in "the Eastern District of

Virginia and elsewhere."[3]  Gov't Opp. at 2; *see also* Superseding Indictment, ¶¶ 8, 14.  Previously, the Fourth Circuit has held that "an indictment that merely charge[s] the crime as having been committed within the federal district is sufficient."  *United States v. Lane*, No. 2:14-CR-139, 2014 WL 7157623, at *3 (E.D. Va. Dec. 12, 2014) (citing *Burk v. United States,* 179 F.2d 305 (4th Cir. 1950) (per curiam)).  Thus, the Court will deny Defendant's request for additional information on each federal district involved in the alleged acts.

Finally, the Court finds no merit in Defendant's request for the Government to identify the amount of the loss attributable to him.  To begin, the Government has already given Defendant at least some idea of what the total losses may be, as the superseding indictment includes a forfeiture notice regarding $224,044.93 in fraudulent proceeds.  Superseding Indictment, ¶ 33.  At the same time, as the Government points out, it is not required to prove the amount of money attributable to Defendant as an element of any of the charged offenses.  Gov't Opp. at 4 n.1.  Thus, this type of information does not qualify as vital to Defendant's ability to prepare for trial.  The Court therefore denies Defendant's request for the amount of the losses attributable to him.

---

[3] One only has to read the superseding indictment to discover that it also lists alleged overt acts that took place in Ohio; Arlington, Virginia; Germantown, Maryland; Warrenton, Virginia; Portland, Oregon; Marietta, Georgia; Beltsville, Maryland; and Washington, D.C.  Superseding Indictment, ¶¶ 12(b), (e)-(i).

8

B.  Motion to Suppress[4]

On October 16, 2014, Patrolman First Class ("PFC") Brandon J. Dodrill, a member of the police department in Summersville, West Virginia, received a call from a Family Dollar store regarding the attempted use of a stolen credit card. A Family Dollar employee stated that an individual had tried to purchase a $100 prepaid card and then fled when the card used for payment was flagged as stolen. The employee provided a description of the car, its license plate, and the fact that it was heading east toward Route 19. The employee also provided a description of the suspect.

PFC Dodrill spotted a vehicle that appeared to match the description provided by the Family Dollar store employee. He stopped the vehicle and encountered two individuals: Defendant, who was driving, and a passenger. Defendant matched the description of the suspect that the Dollar Store employee had given police, with the exception of a striped sweatshirt that was found in the vehicle.

---

[4] The Court includes several facts surrounding Defendant's arrest in West Virginia as a way to provide additional context for Defendant's motion to suppress. These facts are taken from the Government's Opposition [Dkt. 58], which relies upon Summersville Police Department records, including an incident report, a criminal complaint, and two search warrants. At oral argument, Defendant stated that he does not dispute these facts, but thinks they are irrelevant. Of course, in accordance with the proper standard of review outlined above, this Court's analysis only considered those facts included in the four corners of both search warrant affidavits, as well as any reasonable inferences that can be drawn therefrom.

Initially, Defendant consented to a search of the vehicle. Law enforcement recovered fifteen prepaid payment cards, some of which were still in their original packaging. Law enforcement also determined that the vehicle had been rented to a "Courtney Thompson" on September 17, 2014, and was overdue for return. Law enforcement observed no luggage in the vehicle. During the course of the search, Defendant and his passenger admitted to PFC Dodrill that they had traveled to West Virginia from Washington, D.C., but stated that they had no specific travel plans. They also told PFC Dodrill that they had attempted to use the stolen credit card, but claimed that they had found it at a gas station. At some point, Defendant withdrew consent for the search.

PFC Dodrill took Defendant and his passenger to the Family Dollar store, where the employee identified Defendant as the individual who had attempted to use the stolen payment card. As a result, PFC Dodrill arrested Defendant and his passenger for allegedly committing three state crimes. He then seized incident to their arrest a Nokia cell phone from Defendant's passenger and a black Apple iPhone from Defendant.

On October 16, 2014, PFC Dodrill obtained a search warrant from a magistrate judge in Nicholas County, West Virginia, to search both of the cell phones seized during the traffic stop. On October 20, 2014, PFC Dodrill obtained a second search warrant

to search the same two phones, as well as a third white Apple iPhone.[5]  The facts in both affidavits submitted in support of the search warrants are substantially similar.

Pursuant to the two warrants, law enforcement searched all three cell phones.  As relevant here, the search of the black Apple iPhone yielded, *inter alia*, text messages with pictures of payment cards, an email with links to eBay for magnetic card strip readers and writers, and emails with payment card numbers belonging to other individuals.

Defendant now moves to suppress all evidence found during the search of his black Apple iPhone on the grounds that: (1) the search warrant lacked probable cause; and (2) as a result, the warrant was so facially deficient that the good faith exception does not apply.  Def.'s Mot. to Suppress [Dkt. 51], ¶¶ 4-5.  The Court will address each of these arguments in turn.

First, the affidavits submitted in support of the two search warrants in this case contain sufficient facts to support a finding of probable cause.  As the Government correctly concedes, neither affidavit delineates "an express nexus between the seized cellphones and the criminal activity at issue."  Gov't Opp. [Dkt. 58] at 7.  Contrary to Defendant's claim, however, PFC Dodrill's failure to include these facts does not, on its own, necessarily

---

[5] Defendant's motion includes both the black and white Apple iPhones.  However, because the Government does not currently have the white iPhone in its possession, nor intend to introduce at trial any data that may be on that device, Defendant's motion with respect to the white iPhone is denied as moot.

preclude any finding of probable cause.  That is because, in addition to considering the facts alleged in an affidavit, a magistrate also has the "authority . . . to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant."  *Gates*, 462 U.S. at 235.

In the instant case, the affidavits established that Defendant, who was driving with another individual in a car rented in a third person's name, matched the description of an individual who had attempted to use a stolen payment card at a Family Dollar store.  The affidavits further stated that Defendant and his passenger told the officer that they were from Washington, D.C., but had no travel plans or luggage in the car.  Moreover, the affidavits established that a search of the car revealed fifteen gift cards, as well as receipts from multiple states.  Finally, PFC Dodrill stated in the affidavit that, based on his training and experience, a "current trend" in credit card fraud is to travel to multiple jurisdictions and use stolen payment cards to purchase gift cards.

Based on these facts, it was reasonable for the magistrate judge to infer that Defendant was involved in a criminal conspiracy to commit credit card fraud.  It was also reasonable for the magistrate judge to infer that Defendant may have used his cell phone to communicate with his co-conspirators.  Accordingly, the Court finds that the magistrate judge made a

commonsense determination that Defendant's black Apple iPhone had a sufficient relationship to the crimes charged to permit a search of its contents.

In any event, even if the warrants at issue here lacked probable cause to support the search of Defendant's cell phone, the resulting search would still be permissible under the good faith exception established in *United States v. Leon,* 468 U.S. 897, 913 (1984). Pursuant to the good faith exception, a court should not suppress the fruits of a search conducted under authority of a search warrant unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922 n.23. The Supreme Court has identified four situations in which an officer's reliance on a search warrant would not be objectively reasonable:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
>
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

13

*United States v. Hyppolite,* 65 F.3d 1151, 1156 (4th Cir. 1995) (quoting *Leon,* 468 U.S. at 923).

Only the third exemption applies to the present case. However, Defendant's argument with respect to this exemption is meritless. As described above, the facts in the affidavits connected Defendant to a particular criminal act that took place in West Virginia, as well as to the possibility that he was a member of a credit card fraud conspiracy. The affidavits also established that Defendant was driving a car rented in a third party's name with another passenger, both of whom were from Washington, D.C., but who had no travel plans or luggage in the car. It was reasonable for the magistrate judge to infer, based on these facts, that Defendant had used his cell phone to plan and communicate the charged crimes with his co-conspirators. Thus, the undersigned cannot conclude, as Defendant suggests, that the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

C. <u>Motion for Discovery</u>

Finally, Defendant moves the Court to direct the Government to provide him with certain discovery. Def.'s Mot. for Discovery [Dkt. 50] at 1. Specifically, Defendant requests the following information: (1) the prior criminal record, whether state or federal, of any potential Government witnesses; (2) any and all Government surveillance data, recordings, or computer

14

data, including any data generated by license plate reader systems; (3) any documents relating to any payments provided to any Government witnesses or cooperators; (4) the names, addresses, and agencies of any experts contacted or consulted by the Government, including a list of all experts who will testify at trial; (5) all mental and psychiatric records of any Government witnesses that may relate to a witness's ability to be truthful; (6) whether any charges were dropped against individuals who provided information to the investigation; (7) any information regarding whether Government witnesses have a history of drug use; (8) the Reports of Investigation on Defendant; and (9) anything seized from Defendant or his alleged co-conspirators. *Id.*, ¶¶ 1-9.

As a preliminary matter, the Government points out that the parties have failed to reach an agreement regarding the proposed protective order submitted to this Court on May 3, 2017. Gov't Opp. [Dkt. 55], ¶ 1. This proposed order requires defense counsel to return or destroy any victims' personally identifying information ("PII") no later than 30 days after the case concludes and the last appeal is final. *Id.*, ¶ 4. According to the Government, Defendant's counsel objects to this timeline, claiming that he must preserve the victims' PII for at least up to ten

years.[6]  *Id.*  The Government has notified Defendant that it will not provide an initial discovery production of approximately 81,000 records until after an agreement has been reached regarding this protective order.  *Id.*, ¶ 3.  Because Defendant failed to disclose this dispute to the Court, the Government asserts that Defendant's motion amounts to nothing more than a request that the Court order discovery to be produced.  *Id.*, ¶ 5.  For that reason, the Government asks this Court to enter the proposed discovery and protective orders and to deny Defendant's motion as moot.  *Id.*

Here, as the Government points out, Defendant failed to provide the Court with an alternate discovery or protective order in his initial motion.[7]  Defendant also failed to offer a legitimate reason as to why he needs to keep the victims' PII for so many years.  Because Defendant's specific discovery requests are already addressed by the broad language of the Government's proposed discovery order, as well as because the Government has offered to make its initial discovery production available as soon as an agreement regarding the protective order is reached, the Court will enter the Government's proposed discovery and protective orders today.  Accordingly, Defendant's motion for discovery is denied as moot.

---

[6] At oral argument, defense counsel stated that he would like to keep these records indefinitely, presumably to be prepared for any eventuality that could arise, including a judge asking him in the future for copies of discovery.
[7] Defendant did include both proposed orders as attachments to his reply brief. As noted above, however, this reply brief was untimely under the Local Rules.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion for a Bill of Particulars in its entirety. The Court will also deny his Motion to Suppress. Finally, the Court will deny Defendant's Motion for Discovery.

An appropriate Order shall issue.

 

May 30, 2017  
Alexandria, Virginia

/s/  
James C. Cacheris  
UNITED STATES DISTRICT COURT JUDGE